ESTATE OF ALEXANDER MARTON, DECEASED, BY BARONESS ELIZABETH HATVANY-MARTON, AS EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104285. Promulgated June 25, 1942.

*John J. Sweedler, Esq.*, for the petitioner.
*J. R. Riggles, Esq.*, for the respondent.

OPINION.

LEECH: Briefly, the facts are that the petitioner is the executrix of the estate of Alexander Marton who, in his lifetime, was a citizen and resident of Budapest, Hungary, where he was engaged in the publishing business. At no time had he an office or place of business in the United States.

On or before June 4, 1936, petitioner's decedent and one Eugene Heltai, also a nonresident alien, jointly sold and conveyed to the Metro-Goldwyn-Mayer Corporation, a United States corporation, the motion picture rights to a novel or play written by Heltai and published by petitioner's decedent, entitled "Silent Knight."

The agreement of sale of these motion picture rights was negotiated in New York City but was executed by petitioner's decedent and Heltai in Budapest, Hungary. Payment of the consideration was made in New York City to the agent of the owners of these rights. The con-

tract of sale specified that the world-wide rights for the production of the work in motion pictures was conveyed.

Of the consideration paid, petitioner's decedent's share was $13,000. A withholding tax of 4 percent was retained by the agent and paid to the collector of internal revenue. The balance, $12,480, was forwarded to petitioner's decedent.

The deficiency arises through the action of respondent in computing tax at the rate of 10 percent under section 143 of the Revenue Act of 1936. Against the amount so computed he has given credit for the tax at the rate of 4 percent withheld and paid by decedent's agent.

Petitioner contends first that the tax is not to be computed upon the total consideration received by her decedent because the rights conveyed were the world rights and that the only portion of the consideration constituting income from sources within the United States is the portion paid for the United States rights, covered by copyright taken out in this country, which was specifically assigned at the time of the transfer. It is not contested that the parties to the agreement made no segregation of the amounts paid for the United States rights as distinguished from the rights in other parts of the world. However it is argued that a reasonable segregation may be made, based on the percentage of the total income of the Metro-Goldwyn-Mayer Corporation from its activities, derived from sources within the United States and sources without the United States, for the four years following the acquisition of such rights by that corporation. It is admitted that the corporation has never yet made use of the rights it thus acquired.

We think that a segregation of the purchase price upon the basis of income derived by the corporation from its production and exhibition of other pictures in this and foreign countries would be wholly unjustified. It would have been a simple matter for the parties to have segregated the purchase of the domestic from the foreign rights. This they did not do and we can not supply that omission by surmise. For all we know, the foreign rights to this picture were considered of little or no value. In fact, just what these foreign rights included, we do not know. Although petitioner's counsel on brief states that under the laws of Hungary and the other nations of the world outside of the United States, as signatories of the Berne Convention, the publishing of the work gave the author and publisher a world-wide copyright in countries other than the United States, no proof was made either of the Hungarian law, the Berne Convention, or the signatories thereto. Under such conditions, we can not determine what the rights of the decedent were outside of those possessed under the copyright of the work in the United States, which has been stipulated.

Not only is no segregation of the purchase price possible, but in any event the total consideration paid to the decedent is, we think, subject

to income tax as income from sources within the United States. The question is similar to that presented in *Sabatini* v. *Commissioner*, 98 Fed. (2d) 53, where it was held that the amount paid for the exclusive world-wide rights to produce motion pictures based upon the works of that author must be deemed to be from sources within the United States, since it was paid for the use of those rights in the United States and the contested royalty emanated from that source. See also *Ingram* v. *Bowers*, 47 Fed. (2d) 925; affd., 57 Fed. (2d) 65. The sale was not of the work but merely the license to use it for a limited purpose. *E. Phillips Oppenheim*, 31 B. T. A. 563; *Irving Berlin*, 42 B. T. A. 668. We think that the source of this payment, which is in its nature admittedly a royalty, was within the United States.

Petitioner contends further, however, that respondent is in error in computing the tax at 10 percent instead of at the rate of 4 percent which was that used by the withholding agent. It is insisted that the Revenue Act of 1936 was not approved until June 22 of that year, whereas the transfer in question occurred on the preceding June 4. It is then argued that the provision of the Revenue Act of 1936 imposing a tax at the rate of 10 percent, even though that act applies to all income received subsequent to December 31, 1935, should be read in connection with section 143 (g) of that act, which approves the withholding rate of 4 percent in those cases where the agent had actually withheld and paid at that rate as required by the Revenue Act of 1934, prior to a date 10 days subsequent to the enactment of the Revenue Act of 1936.

Undoubtedly the withholding provisions of the Revenue Acts of 1934 and 1936 are to facilitate administratively the collection of the tax. But these provisions do not impose the tax. Section 211 of the 1934 Act imposes a rate of 4 percent and the same section of the 1936 Act fixes a rate of 10 percent. The mere fact that, under the provisions of the Revenue Act of 1934, the forwarding agent had properly retained and paid over the tax at the rate of 4 percent upon this contested income, and thus was relieved of the withholding obligation, does not alter the fact that the Revenue Act of 1936 imposed upon that same income a tax at the rate of 10 percent. The respondent properly computed the deficiency at the latter rate. Cf. *Winterbottom Book Cloth Co., Ltd.*, 43 B. T. A. 572.

We do not agree with petitioner's contention that the United States had no jurisdiction *in rem* to impose a tax subsequent to the transmission to the decedent of the balance of the fund collected by the withholding agent. This was income from sources within the United States and subject to its laws in the hands of the recipient. *Frank W. Ross*, 44 B. T. A. 1 (on appeal, C. C. A., 4th Cir.); *Lord Forres*, 25 B. T. A. 154.  *Decision will be entered for the respondent.*