## WODEHOUSE v. COMMISSIONER OF INTERNAL REVENUE.

### Docket 3, No. 20925.

United States Court of Appeals
Second Circuit.

Argued Oct. 6, 1949.

Decided Nov. 21, 1949.

Watson Washburn, New York City, for petitioner; Royal E. Mygatt, New York City, of counsel.

Charles Oliphant, Washington, D. C., Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack and Helen Goodner, Special Assistants to the Attorney General, for respondent.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This appeal involves the 1940 income tax of the well-known author P. G. Wodehouse. He is a non-resident alien. During the year 1940 he received income from sources within the United States taxable under section 211 of the Internal Revenue Code, 26 U.S.C.A. § 211. The appeal does not question his taxability, but challenges the amount of the deficiency found against him.

The facts giving rise to the questions presented may be stated briefly. On December 1, 1939 Mr. Wodehouse executed in France an assignment to his wife of an undivided half interest in an unpublished story entitled "Quick Service" of which he was the author. He mailed the assignment to his attorney in New York City and the attorney sent a copy thereof to the Reynolds Agency with instructions to note that Mrs. Wodehouse would be entitled to a half interest in any contracts the Agency might negotiate with respect to the story. The Agency sold the serial rights in the story to Curtis Publishing Company for publication in The Saturday Evening Post and received therefor on January 16, 1940 the sum of $40,000. This sum, less $4,000 withheld for United States income taxes and $2,000 for the Agency's commission, was paid by it to the National City Bank for deposit to the accounts of Mr. and Mrs. Wodehouse, $17,000 each. The transfer of serial rights included Canadian as well as American rights but the Tax Court allocated to the Canadian rights no part of the $40,000 paid. This is assigned as error by the appellant. The Tax Court also found that the assignment of a half interest in the story by Mr. Wodehouse to his wife was not "a bona fide gift" and consequently included in his gross income the whole sum paid by Curtis Publishing Company for the serial rights. The correctness of this ruling presents the second question raised by the appellant.

That royalties paid for the American rights in the story of a non-resident alien author constitute taxable gross income to him is no longer open to debate. Commissioner of Internal Revenue v. Wodehouse, 337 U.S. 369, 69 S.Ct. 1120, involving the petitioner's income tax liability for the years 1938 and 1941 and decided subsequently to the Tax Court's Opinion in the case at bar. However the Supreme Court did not there decide the two questions now presented.

Mr. Reynolds testified that the 1940 sale of serial rights included both Canadian and United States rights; that few magazines in the United States would buy American rights without also buying Canadian rights, that he had himself sold Canadian rights alone for $1,500, and had known separate Canadian serial rights to bring as much as $2,000 but that so far as he knew

no serial rights as valuable as Wodehouse's had ever been sold separately in Canada. Since the Saturday Evening Post had a circulation outside the United States of approximately 6% of its total circulation, he was of opinion that the value of the Canadian rights in a Wodehouse serial would be about 6% of the price paid. The Tax Court held that "these collateral evidential facts do not afford us a reliable basis for assigning and fixing a value, if any, to the Canadian rights. The parties to the contract were best able to make a proper allocation and segregation of the respective values. They neglected or chose not to do so." Consequently the Tax Court followed its decision in Sax Rohmer, 5 T.C. 183, where it had held that since there was no basis on which it could properly make an allocation, the full amount must be deemed to be from sources within the United States. The Rohmer decision was affirmed by this court in Rohmer v. Commissioner, 2 Cir., 153 F.2d 61, certiorari denied 328 U.S. 862, 66 S.Ct. 1367, 90 L. Ed. 1632, and similar action by the Tax Court was affirmed by us in Molner v. Commissioner, 2 Cir., 156 F.2d 924. My brothers are of the opinion that these cases require us to approve the Tax Court's ruling in the case at bar.

With this conclusion I disagree. It does not appear that the proof presented in those cases was identical with the proof submitted in the case at bar. The testimony of Mr. Reynolds, who negotiated the terms of the sale for the present appellant, supplied proof of a kind not inconsistent with what we suggested in the Rohmer case might have been offered.[1] In the Molnar case, although we agreed with the Tax Court that the evidence was not sufficient to require the making of an allocation, we clearly intimated that the testimony of experts familiar with the comparative value of domestic and foreign rights might furnish a sufficient basis for an allocation.[2] Such evidence is here to be found in the testimony of Mr. Reynolds who acted as the seller's agent. The rule is well settled that when the proof shows that the Commissioner's determination was wrong, the taxpayer need not show the exact amount of the tax that might lawfully be assessed against him. Helvering v. Taylor, 293 U.S. 507, 515-516, 55 S.Ct. 287, 79 L.Ed. 623; Cohan v. Commissioner, 2 Cir., 39 F.2d 540, 543-544; Durkee v. Commissioner, 6 Cir., 162 F.2d 184, 187, 173 A. L.R. 553. In my opinion the testimony of Mr. Reynolds furnished sufficient evidence that the purchaser bought the Canadian rights, as well as the American, and that the Canadian rights had some independent value. Accordingly I think it was an error for the Tax Court to refuse to allocate any part of the purchase price to the Canadian rights and I would remand the cause with directions that such an allocation be made.

 In taxing to the appellant the royalties received by his wife the Tax Court made a finding that "no real donative intent" prompted his assignment to her. It is difficult to know precisely what this finding means. Concededly the donor's motive in making the gift was to reduce his taxes but as the Tax Court itself noted such a motive does not preclude the making of a valid gift. Verbally the assignment transferred to Mrs. Wodehouse an undivided half interest "in the said manuscript and the copyright therein, including all literary * * * and other rights of every nature * * * to be hers in perpetuity." Such an instrument expresses the grantor's intent to make the gift and deprives him absolutely of all interest in or control over the property transferred. It should be sustained as a valid gift, taxwise as well as otherwise, unless there exists when the gift is made an understanding between the parties that despite the formal transfer the donor is to retain dominion over the property conveyed. The only evidence in the record from which such an understanding might be inferred is the fact that Mr. Wodehouse sent the manuscript to the literary agent who customarily acted for him in making contracts with publishers. That agent however was advised of the assignment and

---

1. 153 F.2d 61 at page 65.

2. 156 F.2d 924, at page 926.

instructed to send to Mrs. Wodehouse her half of the proceeds of any contract he negotiated. Whether Mr. Wodehouse consulted with his wife before transmitting the manuscript to the literary agent does not appear.[3] If he did her acquiescence in his proposal to have the literary agent dispose of their serial rights would not be sufficient to infer that they had previously agreed that he should retain control of the half interest purportedly conveyed to her. Nor do we think such an inference would be justified even if it be assumed that he did not consult her. A husband may be so certain that his wife will follow his advice in business matters that he will assume to act on her behalf without previous consultation, but this does not mean that he has reserved legal power to do so when making her the gift.

■ In the contract which Curtis Publishing Company made with the Reynolds Agency the company agreed that after publication it would "reassign to the author on demand all rights, except American (including Canadian and South American) serial rights." The Tax Court thought it "significant" that "notice of the alleged joint ownership" of the novel was not given to the publishing company. Precisely what significance this fact has to invalidate the gift we are unable to see. The publishing company used its customary printed form of acceptance. The Agency knew of the joint ownership and its failure to inform the publishing company thereof—unless pursuant to instructions, which it was not given—can raise no inference that the gift was incomplete. If the publishing company had reassigned the

rights to Mr. Wodehouse and he had accepted them that might, indeed, justify an inference that he did not by his gift intend to renounce dominion of the half interest conveyed to his wife, but there is no evidence that the company has as yet made any reassignment.

■ The respondent asserts that this case falls within the rule that formal assignments of property, of which the assignor by virtue of his control remains in substance, or for practical purposes, the true owner, are not operative to relieve the assignor from tax on the income from the property which is paid to his assignee.[4] He contends that the situation is essentially the same as in Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. We think that case distinguishable. There the donor assigned the right to collect insurance commissions on a contract already performed by him. Here the donor had no contract right to royalties when he made the gift. He assigned to his wife property which is as freely transferable by gift as is real estate or stocks and bonds, and the income which she later received therefrom was paid under a contract negotiated by an agent who knew he was acting for her and not for her husband with respect to her half interest in the manuscript. Her husband was not the creator of her right to receive royalties. He was the creator of the story but her right to receive royalties arose from a contract negotiated by her agent on her behalf. The situation as we view it is no different than when a husband conveys to his wife a half interest in real estate which is thereafter leased to a tenant. The fact

---

3. The case came to trial in October 1945 in the absence of Mr. Wodehouse. His attorney had tried to get him here but received a cable from him reading: "Embassy says no transport before Spring and no visas issued unless transport arranged." The Tax Court's opinion noted that "Neither the petitioner nor his wife was present to testify as to the interest in the assignment and the circumstances surrounding it." In our opinion in view of the message above mentioned, no adverse inference should be drawn from their failure to testify.

4. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; cf. Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210.

that the lease was made by an agent who had previously managed similar property for the husband would not without more justify an inference that the gift was not bona fide and complete. In our opinion the record does not support the Tax Court's finding of "no real donative intent."

The cause is remanded for further proceedings in accordance with the foregoing opinion.

L. HAND, Circuit Judge (concurring).

As to the first point, I concur with my brother Clark in voting to affirm, for the same reasons that I concurred in Molnar v. Commissioner,* although, were the matter res integra, I should vote to reverse. As to the second point, I am in full accord with the opinion.

CLARK, Circuit Judge (dissenting in part).

I disagree with so much of the opinion and decision as reverses the Tax Court's finding of lack of intent sufficient to support the gift to the taxpayer's wife. Upon the record, and having in mind the burden upon the taxpayer to show the necessary donative intent, this finding seems to me amply supported and we are not entitled to overturn it as a matter of law. As pointed out, neither the taxpayer nor his wife actually testified; conceding that the excuses for their absence were sufficient, nevertheless the record remains barren of anything but the most formal (and largely secret) document of assignment. Since their testimony can now be taken, I would, at the very least, return the case for a fuller trial.

My suggestion that the document was largely secret has reference to the outward circumstances so far as they appear, and not necessarily to the parties' intent, as to which we have so little evidence. For the document was a transaction between husband and wife, prepared by their attorney for the sole and specific purpose of reducing the husband's taxes; and it was transmitted only to his agent and without any other showing of real control of the wife over her alleged property. What we really need to know is whether Mrs. Wodehouse was intended to control the disposition of her half of the property, including its use in the foreign or movie or radio trade, against any plan or demand of her husband, and whether she was prepared to assert such a right against her husband's wishes or desires. The evidence that the Wodehouses were a "very united couple" and that their monies were normally kept in a joint account under the taxpayer's control certainly supports the Tax Court's finding that Mrs. Wodehouse could not, and was never intended to, have any independent rights over the royalties involved here.

"The power to dispose of income is the equivalent of ownership of it," Helvering v. Horst, 311 U.S. 112, 118, 61 S.Ct 144, 147, 85 L.Ed. 75, 131 A.L.R. 655; and my brothers concede, as in the light of Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, they must, that if Wodehouse had given his wife a half-interest in the royalties after he had sold the novel, the income would be taxable to him. To let him escape taxation because the assignment was made before, rather than after, the assured sale of the novel seems to me to rely on the kind of nice distinction which the Supreme Court has often told us is not to be permitted to inhibit the taxing power.

Our decision seems to me to provide a very easy way around taxes from property, over which in the eyes of the world the taxpayer retains full control. The ordinary rules of burden of proof of intent and delivery in the making of a gift afford a protection against this consequence, which ought not to be relaxed by a trier of fact, much less set aside as error of law on review. I would affirm in full.