107 T.C. No. 10


UNITED STATES TAX COURT


SDI NETHERLANDS B.V., f.k.a.
SDI INTERNATIONAL B.V., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23747-94.                Filed October 2, 1996.

P was the licensee of a Bermuda corporation (SDI
Bermuda) of worldwide rights to use computer software.
P in turn licensed those rights for use in the United
States to a U.S. corporation (SDI USA).  P received
royalties from SDI USA as well as from other licensees.
P paid specified percentages of the royalties it
received from its licensees to SDI Bermuda.  P, SDI
USA, and SDI Bermuda were members of a group of
corporations under common control.  <u>Held</u>, the two
licenses were separate and distinct from each other
with the result that the royalties paid to P by SDI USA
did not retain their U.S. source character as part of
the royalties paid by P to SDI Bermuda.  Consequently,
they were not income "received from sources within the
United States by" SDI Bermuda within the meaning of
sec. 881 (a), I.R.C., so as to subject P to withholding
tax as provided in secs. 1441(a) and 1442(a), I.R.C.

Arthur D. Pasternak, Douglas R. Cox, and Jeffrey A. Fiarman, for petitioner.

Karen E. Chandler and Kristine A. Roth, for respondent.


OPINION


TANNENWALD, Judge:  Respondent determined deficiencies in Federal withholding taxes and additions to tax as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1)[1] |
|------|-----------|--------------------------------------|
| 1987 | $678,449 | $169,612 |
| 1988 | 881,067 | 220,267 |
| 1989 | 825,513 | 206,378 |
| 1990 | 641,837 | 160,459 |

The issue in dispute is whether petitioner, a corporation organized under the laws of the Kingdom of The Netherlands, is liable for withholding taxes on royalties paid to a Bermuda corporation, and additions to tax for failure to file Forms 1042 for each of the years in issue.

All the facts have been stipulated.  The stipulation of facts and attached exhibits are incorporated herein by this reference.

---

[1]  All section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Background

Petitioner is a foreign corporation organized in 1974 under the laws of the Kingdom of The Netherlands. Petitioner was formerly known as SDI International B.V. and, prior to that, as Software Design Dervis B.V.[2] Petitioner is the successor in business to Software Design Sebas B.V., a foreign corporation organized in 1972 under the laws of the Kingdom of The Netherlands.

At the time of filing the petition, petitioner maintained its principal office in Rotterdam, The Netherlands.

During the years in issue, petitioner was a member of an affiliated group of companies (the SDI Group) whose members designed, manufactured, marketed, and serviced commercial systems software for use on IBM mainframe computers worldwide.

SDI Ltd., a corporation organized under the laws of Bermuda, is the parent company of the SDI Group. During the years in issue, petitioner was a wholly owned subsidiary of SDI Antilles, a Netherlands Antilles corporation, which was a wholly owned subsidiary of SDI Ltd.

The SDI Group also included SDI Bermuda Ltd. (SDI Bermuda), a corporation organized under the laws of Bermuda which, during the years in issue was a wholly owned subsidiary of SDI Ltd.

_____

[2] Reference to petitioner and other corporations who are members of the SDI Group herein includes predecessor corporations.

SDI USA, Inc. (SDI USA), a corporation organized under the laws of the State of California was, during the years at issue, a wholly owned subsidiary of petitioner.

Petitioner also had subsidiary corporations in Germany, France, and the United Kingdom.

A brochure used by the SDI Group for the years in issue describes SDI Ltd. as the "Corporate Office" of the SDI Group, and petitioner, SDI USA and other members of the SDI Group as "Marketing" offices of the SDI Group.

SDI Ltd. provided management services to certain of its direct and indirect subsidiaries for which such subsidiaries paid it management fees.

Royalty Payments Made By Petitioner

During the years in issue, petitioner licensed from SDI Bermuda, pursuant to a license agreement dated November 28, 1986 (Bermuda license agreement), the worldwide rights to certain commercial systems software for use on IBM mainframe computers (the software). The Bermuda license agreement granted petitioner a nonexclusive license to use or to market the use of, on a worldwide basis, all of the software and any and all industrial and intellectual property rights SDI Ltd. had or would acquire

from the effective date of the agreement[3], in exchange for certain royalty payments. The agreement further provided that petitioner "shall specifically have the right to grant sublicenses and Agents for the right to use and to market the use of any and all marketing rights granted to [petitioner] under the terms" of the agreement. The agreement was valid for an indefinite period and could be unilaterally terminated by either party on 3 months' written notice.

The Bermuda license agreement contained no express reference to the United States.

With respect to royalties, the Bermuda license agreement provided:

> 8.1 The royalties payable to [SDI Bermuda] by [petitioner] under this Agreement are fixed at 93% of the net amount of all of the royalties due to [petitioner] by all persons, entities and institutions which [petitioner] sublicensed any of the rights licensed to [petitioner] under this Agreement ("Sublicensees"). The aforementioned net amount is the amount that remains after the deduction of the withholding tax on royalties to be withheld when the Sublicensees of [petitioner] or Agents of [petitioner] pay the royalties due to the [petitioner].

> 8.2 The aforementioned percentage of 93% will be increased if the net amount of royalties received by [petitioner] exceeds * * * in a specific accounting period [the following amounts in Dutch florins]:

---

[3] The record does not explain how or from whom SDI Ltd., known in l986 as Castle Investments Ltd., acquired its existing rights, but it is clear that at least some of them had been previously owned by petitioner's predecessor.

| If [Petitioner's] royalty receipts exceed: | but not | Then the Percentage for that portion to be paid on will be: |
|---|---|---|
| Dfl | Dfl | Percent |
| 2.000.000,= | 4.000.000,= | 94 |
| 4.000.000,= | 6.000.000,= | 95 |
| 6.000.000,= | 8.000.000,= | 96 |
| 8.000.000,= | 10.000.000,= | 97 |
| 10.000.000,= | | 98 |

\* \* \* \* \* \* \*

8.3  All royalties payable to [SDI Bermuda] under this Agreement shall be due within 28 days from the moment that the royalties to be paid by the Sublicensees shall be due to [petitioner].  All royalties payable to [SDI Bermuda] under this Agreement, will be paid by [petitioner] at the option of the [petitioner], in the same currency or in U.S. Dollars in which the royalties due to [petitioner] are payable.

8.4  [Petitioner] shall annually provide [SDI Bermuda] with a survey of all royalties due by the Sub-licensees and pay [SDI Bermuda] in accordance with subsection 8.1 hereof. Any additional payments due to [SDI Bermuda] pursuant to subsection 8.2 shall be made immediately after the approval of the annual accounts of [petitioner].  [SDI Bermuda] has the right to have a representative examine [petitioner's] accounts.

Petitioner made royalty payments to SDI Bermuda, pursuant to the Bermuda license agreement, during the years in issue, in the following amounts:

| | |
|---|---|
| 1987 | $3,583,983 |
| 1988 | 5,104,781 |
| 1989 | 5,146,862 |
| 1990 | 4,768,349 |

The above payments constituted the following percentages of the total worldwide royalty payments received by petitioner with respect to the software:

| Year | Percentage | Total Royalty Payments Received |
|------|-----------|--------------------------------|
| 1987 | 93.89 | $3,817,182 |
| 1988 | 95.94 | 5,320,816 |
| 1989 | 94.93 | 5,421,908 |
| 1990 | 95.60 | 4,987,662 |

Royalty Payments Received by Petitioner from SDI USA

During the years in issue, petitioner was a party to an exclusive license agreement with SDI USA, dated October 1, 1972, and as modified from time to time, regarding the use and licensing of the software in the United States (the U.S. license agreement).[4]  SDI USA was responsible for the direct marketing and sales of the software in the United States.

The U.S. license agreement provided in part:

> 2.1  In consideration for the payment of the royalties provided hereunder and the performance of the other terms and conditions hereof by [SDI USA], [petitioner] hereby grants and transfers to [SDI USA], upon the terms and subject to the conditions hereinafter set forth, the exclusive right and license during the Term hereof, to have disclosed to it by [petitioner] and to exploit, use and lease and otherwise obtain the benefit of [the software] within the Territory.

---

[4]  At the time this agreement was executed, petitioner was known as Software Design Sebas B.V. (later known as Software Design Dervis B.V.), and SDI USA was known as Software Design, Inc.

2.2  This Exclusive License shall include, (i) the right to sublicense to others the use and lease of [the software] within the Territory, subject, however, to the terms and conditions of this License; and (ii) this License shall also include the right and, as hereinafter provided, the obligation of [SDI USA], to provide or to provide for the exclusive maintenance, servicing and repair of [the software] within the Territory.  * * *

*    *    *    *    *    *    *

2.4  The Territory of this License shall mean and be restricted to the continental United States, Hawaii and Alaska.

Petitioner agreed not to license the software for use or to compete directly or indirectly with SDI USA's exploitation of the software in the United States during the term of its license to SDI USA.[5]

Until February 1987, the agreement provided that SDI USA would pay to petitioner "an annual royalty equal to fifty percent (50%) of the annual gross revenues of [SDI USA] from leasing and sublicensing of [the software], without any deductions therefrom except rebates, discounts and sales or value added taxes."

The U.S. license agreement was modified in February 1987 to provide that SDI USA would pay petitioner "a royalty equal to (50%) fifty percent of the gross billable or invoiced revenues of [SDI USA] with regard to all products licensed herein or further

---

[5]  In l986, these rights became exclusive only as between petitioner and SDI USA and were otherwise subject to the nonexclusive worldwide rights that petitioner acquired at that time.

licensed in the future, without any deductions therefrom except rebates, or, sales or value added taxes."

Petitioner received royalty payments pursuant to the U.S. license agreement from SDI USA, during the years in issue, in the following amounts:

| 1987 | $2,663,401 |
| 1988 | 2,936,889 |
| 1989 | 3,092,710 |
| 1990 | 2,139,458 |

Respondent mailed notices of deficiency to petitioner, one for 1987, 1988, and 1989, and one for 1990, on July 29, 1994.

The parties have stipulated the amounts of royalties received by petitioner from SDI USA and paid by petitioner to SDI Bermuda.  As a consequence, it appears that these amounts, if subject to withholding tax, would produce deficiencies greater than those determined in the notices of deficiency for 1987, 1988, and 1990 and a lesser amount for 1989.  Respondent has made no specific request for any increased deficiencies.

## Discussion

### Increased Deficiencies

Section 6214(a) provides that this Court has jurisdiction to determine an increased deficiency "if claim therefor is asserted * * * at or before the hearing or a rehearing".  Under the circumstances herein, where the amounts upon which the mathematical calculation of the withholding tax is based have

been stipulated by the parties and where the issue upon which the liability for both the original and the increased deficiencies depends is the same, we think that respondent has made a timely claim for the increased deficiencies and see no reason to preclude our consideration of such increases. See Pallottini v. Commissioner, 90 T.C. 498, 500 (1988); cf. Law v. Commissioner, 84 T.C. 985, 989 (1984).[6]  Indeed, as we understand petitioner's position, it does not oppose such consideration except in the context of its contention that the burden of proof should in any event be shifted to respondent under Rule 142(a).

Burden of Proof

Petitioner argues that the notices of deficiency refer only to section 1441, so that reliance by respondent on section 1442 constitutes a new matter on which respondent has the burden of proof under Rule 142(a).  That burden of proof would, according to petitioner, require respondent to prove that, during the years in issue, SDI Bermuda was not engaged in a trade or business within the United States or, if so engaged, that the royalties received from petitioner by SDI Bermuda were not effectively connected with such trade or business[7]; if SDI Bermuda were so

---

[6]  See also Brown v. Commissioner, T.C. Memo. 1996-325; cf. Wicker v. Commissioner, T.C. Memo. 1993-431, affd. without published opinion 50 F.3d 12 (8th Cir. 1995).

[7]  Petitioner makes a further reference to placing the burden of
(continued...)

engaged and the royalties so connected, no withholding would be necessary.[8]  See secs. 1441(c), 1442(a) and (b), 881(a); secs. 1.1442-2, 1.1441-4, Income Tax Regs.

Initially, we deal with petitioner's position in respect of the burden of proof without regard to the increases in deficiencies for 1987, 1988, and 1990.  In this connection, we note that the fact that the case has been fully stipulated does not alter the application of the burden of proof rules.  Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. on other grounds 943 F.2d 22 (8th Cir. 1991).

In Zarin v. Commissioner, 92 T.C. 1084, 1088-1089 (1989), revd. on other grounds 916 F.2d 110 (3d Cir. 1990), we set forth the following frame of reference for determining what is new matter within the meaning of Rule 142(a):

> Rule 142(a) provides that the burden of proof is on petitioner, "except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in his answer, it shall be upon the respondent."  A new position taken by respondent is not necessarily a "new matter" if it merely clarifies or

---

[7](...continued)
proof on respondent in respect of the absence of income from insurance includable under sec. 842, a reference which, under the circumstances herein, we think is irrelevant.

[8]  We also note that, for purposes of this proceeding, respondent does not contend that petitioner maintained an office or place of business in the United States, engaged in trade or business within the United States, or received income effectively connected with the conduct of a trade or business within the United States.

develops respondent's original determination without requiring the presentation of different evidence, being inconsistent with respondent's original determination, or increasing the amount of the deficiency.  Achiro v. Commissioner, 77 T.C. 881, 889-891 (1981).

The notices of deficiency herein provide in pertinent part:

The payments you made to nonresident aliens in the amounts shown are subject to the withholding rate provided by section 1441(a) of the Internal Revenue Code.  Since you did not withhold the tax, and did not establish that the recipient of the payments paid the United States tax, you are liable for the tax that should have been withheld.  * * *

We think that section 1441, which imposes the withholding tax on nonresident alien individuals and foreign partnerships, was cited only for the rate of tax applied by respondent. Respondent cited no section for the source of the deficiencies, nor, indeed, was respondent required to do so.  Jarvis v. Commissioner, 78 T.C. 646, 655-656 (1982).  The language of the notices did not, directly or by necessary inference, exclude a claim under section 1442, which imposes the withholding tax on foreign corporations and upon which respondent proceeds herein. Moreover, section 1442 makes reference to and incorporates section 1441 so that reference to section 1441 is entirely appropriate in a proceeding under section 1442.  See Central de Gas de Chihuahua, S.A. v. Commissioner, 102 T.C. 515, 517 (1994). Beyond this, the very elements of section 1442 upon which petitioner relies to shift to respondent the burden of proof, i.e., the burden of proving that SDI Bermuda was not engaged in

trade or business within the United States or, if so engaged, that the royalties were not effectively connected with such trade or business, are also present in the application of section 1441. See also secs. 1.1442-2 and 1.1441-4, Income Tax Regs.  Compare sec. 1442(b)[9] with sec. 1441(c)[10].  Thus, there is no inconsistency in applying section 1442 rather than section 1441 herein since similar evidence is involved in providing a basis for determining whether or not a taxpayer is exempt from withholding under either section.  Inconsistency and the absence of a need for different evidence are critical elements in

---

[9]  Sec. 1442(b) provides:

>    (b)  Exemption.--Subject to such terms and conditions as may be provided by regulations prescribed by the Secretary, subsection (a) shall not apply in the case of a foreign corporation engaged in trade or business within the United States if the Secretary determines that the requirements of subsection (a) impose an undue administrative burden and that the collection of the tax imposed by section 881 on such corporation will not be jeopardized by the exemption.

[10]  Sec. 1441(c) provides:

>    (c)  Exceptions.--
>    (1)  Income connected with United States business.--No deduction or withholding under subsection (a) shall be required in the case of any item of income (other than compensation for personal services) which is effectively connected with the conduct of a trade or business within the United States and which is included in the gross income of the recipient under section 871(b)(2) for the taxable year.

deciding whether a "new matter" is involved that requires that the burden of proof be shifted to respondent.  See Zarin v. Commissioner, supra; Estate of Emerson v. Commissioner, 67 T.C. 612, 620 (1977).

Finally, we note that petitioner itself contributed to any confusion that may have existed in respect of the applicability of section 1442 or section 1441, referred to in the notices of deficiency.  Prior to the time the notices of deficiency were prepared, respondent had received limited information regarding the royalty payments at issue.  In particular, it was unclear to whom, and in what amount, the royalty payments were being made. Only just prior to the date set for trial and after prodding by the Court did petitioner come forth with evidence as to whom and in what amounts the royalties were paid.

In sum, since the essential elements of proof are the same under the circumstances herein whether section 1441 or section 1442 provides the key to decision, there is no surprise or unfairness in rejecting petitioner's contention that the burden of proof should be shifted to respondent.  See Stewart v. Commissioner, 714 F.2d 977, 990-991 (9th Cir. 1983), affg. T.C. Memo. 1982-209.[11]

Liability for Withholding

---

[11]  See also Ruark v. Commissioner, T.C. Memo. 1969-48, affd. per curiam 449 F.2d 311 (9th Cir. 1971).

Section 881(a) provides that a 30-percent tax shall be imposed on "the amount received from sources within the United States by a foreign corporation" falling within certain categories of income.[12] Section 1442 provides a method for collecting that tax. <u>Central de Gas de Chihuahua, S.A. v. Commissioner</u>, 102 T.C. at 519.

Section 1442 provides in part:

> (a) General Rule.-- In the case of foreign corporations subject to taxation under this subtitle, there shall be deducted and withheld at the source in the same manner and on the same items of income as is provided in section 1441 a tax equal to 30 percent thereof.  * * *

Royalties are among the types of income included in section 1441(b).  Sec. 1.1441-2(a), Income Tax Regs.; see also sec. 1.881-2(b), Income Tax Regs.  In addition, section 861(a)(4) provides that U.S. source income includes:

> (4) Rentals and Royalties.--Rentals or royalties from property located in the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using in the United States patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property.

Section 1441(a) completes the picture of the statutory provisions involved herein.  It provides:

---

[12]  A "foreign" corporation is a corporation that is not created or organized in the United States or under the law of the United States or of any State.  Sec. 7701(a)(4) and (5).

all persons * * * having the control, receipt, custody, disposal, or payment of any of the items of income specified in subsection (b) [which includes "royalties"] (to the extent that any of such items constitutes gross income from sources within the United States), of any nonresident alien individual or of any foreign partnership shall * * * deduct and withhold from such items a tax equal to 30 percent thereof * * *

There can be no dispute that the royalty payments received by petitioner from SDI USA constitute U.S. source income and were received by petitioner as such within the meaning of section 1442(a). See Commissioner v. Wodehouse, 337 U.S. 369 (1949); see also Estate of Marton v. Commissioner, 47 B.T.A. 184 (1942). However, royalties paid by SDI USA to petitioner are exempt from taxation by virtue of section 894 and article IX of the United States-Netherlands Income Tax Convention, April 29, 1948, 62 Stat. 1757, 1762, 1950-1 C.B. 92, as amended by the Supplementary Protocol, June 15, 1955, 6 U.S.T. 3696, 1956-2 C.B. 1116, and as further amended by the United States-Netherlands Supplementary Income Tax Convention, Dec. 30, 1965, 17 U.S.T. 896, 1967-2 C.B. 472 (U.S.-Netherlands treaty); see also sec. 894. There is no comparable U.S. treaty exemption that would apply to royalty payments from petitioner to SDI Bermuda.

The parties have locked horns on several aspects of the application of the statutory provisions in light of the impact of the U.S.-Netherlands treaty exemption: (1) Whether the royalties paid by petitioner to SDI Bermuda constitute income "received

from sources within the United States by" SDI Bermuda and are thus subject to withholding under section 1441(a); (2) whether petitioner can be considered a "withholding agent"; (3) whether there is a limitations period that has expired in respect of respondent's right to assess a deficiency in withholding tax against petitioner; and (4) whether petitioner is liable for additions to tax under section 6651(a)(1) for failure to file withholding tax returns.

For reasons hereinafter set forth, we resolve the first issue in petitioner's favor with the result that it is unnecessary for us to address the remaining issues.[13] Before proceeding with our analysis of the first issue, however, it is important to note that respondent does not question the existence of petitioner as a valid Netherlands corporation or the application of the treaty exemption insofar as the payments by SDI USA to petitioner are concerned. Similarly, respondent does not attack the arrangements under which petitioner had a license of the worldwide rights and SDI USA had a license of the U.S. rights, although respondent does ask us to take into account the

---

[13] Similarly we have no need to decide further whether any elements of proof should be placed on respondent under Rule 142(a) with respect of the increases in the deficiencies for 1987, 1988, and 1990 or whether any such burden should be applied on an overall or year by year basis. See Zarin v. Commissioner, 92 T.C. 1084, 1089 (1989), revd. on other grounds 916 F.2d 110 (3d Cir. 1990).

close relationship of the various corporations involved.  Compare
Gaw v. Commissioner, T.C. Memo. 1995-531, on appeal (D.C. Cir.,
May 20, l996).

Rather, respondent focuses her argument solely on the
proposition that, since the royalties paid by SDI USA to
petitioner were U.S. source income, they retained that character
as part of the royalties paid by petitioner to SDI Bermuda and,
as a matter of law, constitute income "received from sources
within the United States by" SDI Bermuda under section 881(a).[14]
Respondent contends that the fact that such royalties were
combined with non-U.S. source royalties received by petitioner to
determine the amount of royalties payable by petitioner to SDI
Bermuda does not preclude the tracing of the royalties received
by petitioner from SDI USA to U.S. sources.  To implement such
tracing, respondent simply applies the percentage specified in
the worldwide license agreement between petitioner and SDI
Bermuda and utilized in computing the amount of the required
payment by petitioner to SDI Bermuda.  To support her contention
that such an allocation is permissible, respondent cites
Wodehouse v. Commissioner, 15 T.C. 799 (1950); Rohmer v.
Commissioner, 14 T.C. 1467 (1950); Rohmer v. Commissioner, 5 T.C.

---

[14]  At no time has respondent contended that petitioner has
failed to carry its burden of proof in respect of the factual
foundations of this legal issue.

183 (1945), affd. 153 F.2d 61 (2d Cir. 1946); Estate of Marton v. Commissioner, 47 B.T.A. 184 (1942); Molnar v. Commissioner, 156 F.2d 924 (2d Cir. 1946), affg. a Memorandum Opinion of this Court.  In all of these cases, however, the payments, upon which a withholding tax was imposed, were directly from a U.S. payor and the U.S. withholding tax was imposed on that payor.  None of them address the situation involved herein, where there is a second licensing step under which royalties are being paid and upon which the U.S. withholding tax is sought to be imposed.  Thus, these cases provide no guidance in respect of whether the U.S. source characterization of the royalties paid by SDI USA to petitioner flows through to the royalties paid by petitioner to SDI Bermuda.

Petitioner argues that the royalties paid by SDI USA to petitioner and exempt from tax under the Netherlands treaty became merged with the other royalties received by petitioner from non-U.S. sources and consequently lost their character as U.S. source income.  Petitioner submits that, while the royalty payments from SDI USA may be U.S. source income, its royalty payments to SDI Bermuda were made on a separate and independent basis.  With respect to the payments to SDI Bermuda, petitioner contends that they were made pursuant to a worldwide licensing agreement between two foreign corporations, and as such do not constitute income "received from sources within the United

States" so that no withholding is required under section 1442(a).

Pertinent authority on the issue before us is sparse. Indeed respondent relies solely on Rev. Rul. 80-362, 1980-2 C.B. 208, for her "flow-through" position. In Rev. Rul. 80-362, A, a resident of a country other than the United States and The Netherlands, licensed the rights to a U.S. patent to X, a Netherlands corporation. X agreed to pay a fixed royalty each year to A. X relicenses those rights to Y, a U.S. corporation, for use in the United States. In ruling that X was liable for a withholding tax under section 1441, the ruling states:

> In the present factual situation, the royalties from Y to X are exempt from United States tax under Article IX(1) of the Convention. However, the royalties from X to A are not exempt from taxation by the United States because there is no income tax convention between A's country of residence and the United States providing for such an exemption. Since the royalties from X to A are paid in consideration for the privilege of using a patent in the United States, they are treated as income from sources within the United States under section 861(a)(4) of the Code and are subject to United States income taxation under section 871(a)(1)(A). [Rev. Rul. 80-362, 1980-2 C.B. at 208-209.]

We are not persuaded that Rev. Rul. 80-362, supra, provides any significant support for respondent's position herein. It fails to reflect any reasoning or supporting legal authority. This circumstance is particularly relevant in applying the usual rule that, in any event, revenue rulings are not entitled to any special deference. See Northern Indiana Public Service Co. v.

Commissioner, 105 T.C. 341, 350 (1995), on appeal (7th Cir., March 13 and 25, 1996); Halliburton Co. v. Commissioner, 100 T.C. 216, 232 (1993), affd. without published opinion 25 F.3d 1043 (5th Cir. 1994).

At this point, we note that respondent has not argued that petitioner was a mere conduit or agent of SDI USA in paying royalties to SDI Bermuda or that SDI Bermuda was the beneficial owner of the royalties petitioner received from SDI USA so that the U.S.-Netherlands treaty exemption should not apply.  Compare Aiken Industries, Inc. v. Commissioner, 56 T.C. 925 (1971), with Northern Indiana Public Service Co. v. Commissioner, supra; cf. Estate of Petschek v. Commissioner, 81 T.C. 260 (1983), affd. 738 F.2d 67 (2d Cir. 1984).  Presumably such an argument would have produced a situation where SDI USA rather than petitioner would have been targeted by respondent as the taxpayer liable for the withholding tax under section 1442(a).[15]  See Northern Indiana Public Service Co. v. Commissioner, 105 T.C. at 347.

Although Aiken Industries, Inc. v. Commissioner, supra, and Northern Indiana Public Service Co. v. Commissioner, supra,

---

[15]  Given the basis for our disposition of this case, we have no need to deal with the question whether petitioner, even though only a conduit, would meet the statutory requirements of a withholding agent.  See sec. 1.1441-7, Income Tax Regs., which provides that a foreign corporation can be a withholding agent. See also Fides v. Commissioner, 137 F.2d 731 (4th Cir. 1943), affg. 47 B.T.A. 280 (1942); Gaw v. Commissioner, T.C. Memo. 1995-531, on appeal (D.C. Cir., May 20, 1996).

involved the conduit concept, we think they provide some guidance for our disposition of the instant case.  We take this view because the flow-through characterization concept is, in a very real sense, the conduit concept albeit in a somewhat different garb, i.e., whether the U.S. source income is being received as such, because of the status of the paying entity in one case, and the status of the subject matter of the payment in the other.

In Aiken Industries, Inc. v. Commissioner, supra, back-to-back loans, in the identical amounts of principal and rates of interest, were made between a U.S. corporation and a related corporation organized under the laws of the Republic of Honduras, and between the Honduran corporation and its indirect parent. Respondent argued that the Honduran corporation should be disregarded for tax purposes, and that the parent corporation should be deemed the true owner and recipient of the interest payment from the U.S. corporation.  We held the Honduran corporation to be a mere conduit for the passage of interest payments and imposed withholding tax liability on the U.S. corporation.

In Northern Indiana Public Service Co. v. Commissioner, supra, the taxpayer, a domestic corporation, organized a finance subsidiary incorporated in Curacao under the Commercial Code of the Netherlands Antilles, (to which the U.S.-Netherlands treaty applied) for the purpose of issuing notes in the Eurobond market.

The finance subsidiary borrowed $70 million at 17-1/4 percent interest in that market and lent that amount to the taxpayer at 18-1/4 percent interest. Respondent argued that the finance subsidiary should be ignored and that the taxpayer was liable for withholding taxes under section 1441 on the interest payments to the foreign Eurobond holders. Finding that the finance subsidiary engaged in substantive business activity that resulted in significant earnings, we held that the finance subsidiary was not a mere conduit or agent.

We think the within situation falls more within the ambit of Northern Indiana than Aiken Industries. In the latter case, there was an identity both in terms and timing between the back to back loans, as well as a close relationship between the parties involved. In the former case, although there was a clear connecting purpose between the borrowing and lending transactions, i.e., to obtain the benefit of the exemption from the withholding tax on interest under the U.S.-Netherlands treaty; there were differences in terms, i.e., in the interest rate (albeit not large); and a close relationship between all the parties was not present since the borrowings by the finance subsidiary were from unrelated parties.

In the instant case, there was a close relationship between the parties. However, although respondent asks us, in passing, to take that relationship into account, she does not pursue the

matter to the point where she contends that it is a significant factor.  Given the fact that respondent recognizes the existence of all of the parties as valid corporate entities and does not attack the bona fides of the license agreements between SDI USA and petitioner, on the one hand, or petitioner and SDI Bermuda, on the other, we are not disposed to allow the close relationship element to control our decision.

The facts of the matter are that the two license agreements had separate and distinct terms and that petitioner had an independent role as the licensee from SDI Bermuda and the licensor of the other entities, including but not limited to SDI USA.  The schedules of royalty payments provided for a spread, not unlike the spread involved in Northern Indiana, which compensated petitioner for its efforts.  Like the finance subsidiary in Northern Indiana, petitioner engaged in licensing activities from which it realized substantial earnings.  In fact, on a percentage basis, it earned between 5 and 6 percent, compared to the 1 percent earned by that finance subsidiary in Northern Indiana.[16]  Under the circumstances herein, we think these arrangements should be accorded separate status with the result that, although the royalties paid by petitioner to SDI

[16]  In dollar amounts, petitioner retained net royalties in the amounts of $233,199 in 1987, $216,035 in 1988, $275,046 in 1989, and $219,313 in 1990.

Bermuda were derived from the royalties received by petitioner from SDI USA, they were separate payments.

We find support for our conclusion herein in that respondent's view of the law could cause a cascading royalty problem, whereby multiple withholding taxes could be paid on the same royalty payment as it is transferred up a chain of licensors. See, e.g., 1 Isenbergh, International Taxation: U.S. Taxation of Foreign Persons and Foreign Income, par. 7.8, pp. 7:20-7:21 (2d ed. 1996); 2 Kuntz and Peroni, U.S. International Taxation C1-45 - C1-46 (1992); Dale, "Withholding Tax on Payments to Foreign Persons," 36 Tax L. Rev. 49, 66-67 (1980). But for the U.S.-Netherlands treaty, the royalty payments from SDI USA could be subject to withholding tax twice under respondent's reasoning herein.

Respondent argues that only one withholding tax is being sought herein. However, this ignores the fact that, by treaty, the U.S. agreed to forgo taxing royalties and to allow them to be taxed by The Netherlands. Whether or not The Netherlands actually taxed the royalties is irrelevant.

Respondent also infers that she would use her discretion not to apply more than one level of withholding tax on multiple transfers of income that originated as U.S. source income. We think this places an improper exercise of discretion in respondent's hands. To avoid the imposition of interest and

additions to tax as determined by respondent herein, each payor in the chain might well feel compelled to file returns and pay withholding taxes. See Glicklich, "Final Regulations on Conduit Financing Arrangements Empower the IRS", 84 J. Taxn. 5, 12 (1996). We are not disposed to conclude, in the absence of any legislative expression on the subject, that Congress intended the statutory provisions to permit "cascading" with the question of relief left to the mercy of respondent.

We hold that the payments by petitioner with respect to which respondent seeks to impose liability for the 30 percent withholding tax herein were not "received from sources within the United States by" SDI Bermuda under sections 881(a), 1441(a), and 1442(a).[17]

Decision will be entered

for petitioner.

---

[17] We note that changes in the U.S.-Netherlands treaty, applicable to years subsequent to the years before us, may provide a different framework for disposing of this issue. Convention for the Avoidance of Double Taxation, U.S.-Neth., Dec. 18, 1992, Tax Treaties (CCH) par. 6103.01, as amended by Supplementary Protocol, Oct. 13, 1993, Tax Treaties (CCH) par. 6116.