AIKEN INDUSTRIES, INC. (SUCCESSOR BY MERGER TO MECHANICAL PRODUCTS, INC.), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 292–69. Filed August 5, 1971.

*George G. Vest* and *Dorrance Sexton, Jr.,* for the petitioner.
*Steven B. Nagler,* for the respondent.

QUEALY, *Judge:* The respondent determined deficiencies in withholding tax and additions thereto under section 6651(a)[1] as follows:

| Year | Deficiency | Additions to tax under sec. 6651(a) |
|---|---|---|
| 1964 | $27,000 | $6,750 |
| 1965 | 27,000 | 6,750 |

The statutory notice of deficiency was mailed to the petitioner after the statute of limitations barred assessment of the tax for 1964 with the consequence that respondent concedes the deficiency and the addition to tax for that year. Hence, the only year now before this Court is 1965. The issues presented for decision with respect to that year are:

(1) Whether interest paid by a United States corporation to a Honduran corporation organized to collect such interest on behalf of a Bahamian corporation was exempt from United States income tax under an income tax convention between the United States and Honduras, or whether petitioner, as successor by merger to the United States corporation making the interest payments, is liable for withholding taxes on such payments.

(2) Whether the petitioner, as successor by merger to a subsidiary corporation, is liable for the addition to tax established by section 6651(a)(1) for failure to file a required return.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Aiken Industries, Inc. (hereinafter referred to as petitioner), successor by merger to Mechanical Products, Inc. (hereinafter referred to as MPI), is a Delaware corporation which had its principal place of business at all times pertinent hereto in New York, N.Y.

MPI was incorporated March 25, 1963, under the laws of Delaware and was a United States corporation during the calendar years 1964 and 1965. During these years, all of the outstanding stock of MPI was owned by petitioner, and 99.997 percent of the outstanding stock of the petitioner was owned by the Ecuadorian Corp., Ltd. (hereinafter referred to as ECL), a Bahamian corporation. ECL also owned all of the outstanding stock of Compania de Cervezas Nacionales (hereinafter referred to as CCN), an Ecuadorian corporation.

Industrias Hondurenas S.A. de C.V. (hereinafter referred to as Industrias) was incorporated under the laws of the Republic of Honduras on March 30, 1964. From that date through December 31, 1965, all stock of Industrias was beneficially owned by CCN.

On April 1, 1963, MPI borrowed the sum of $2,250,000 from ECL. In return for this loan, MPI issued to ECL a 4-percent sinking fund promissory note (hereinafter sometimes referred to as the note) due in 1983.

On March 31, 1964, ECL assigned the 4-percent sinking fund promissory note of MPI to Industrias. The consideration received by ECL for this assignment of MPI's note was nine promissory notes of Industrias. Each note was payable on demand, each note was in the principal amount of $250,000, and each bore interest in the amount of 4 percent per annum. The directors of Industrias authorized the issuance of Industrias' notes in exchange for the note of MPI at a board of directors meeting held on March 31, 1964. ECL's board of directors ratified the transfer of MPI's note in exchange for Industrias' notes at a meeting held on April 29, 1964.

On March 31, 1964, the treasurer of ECL notified MPI by letter that:

Please be informed that we have assigned and sold on this date all of our right, title and interest in and to the promissory note issued by you to the undersigned on April 1, 1963 in the principal amount of Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000.00), to Industrias Hondurenas, S. A. de C. V., Room 207, Banco Atlantida, Tegucigalpa, Republic of Honduras.

During the years 1964 and 1965, Industrias did not maintain an office in the United States, and it did not carry on any business within the United States. In addition, no United States citizen served as an officer, director, or employee of Industrias.

Industrias has filed tax returns for the years 1964 and 1965 with the Direccion General de la Tributacion Directa of Honduras and paid

all taxes shown due thereon. The return for 1965 has been accepted by the Direccion General de la Tributacion Directa.

During the years 1964 and 1965, the only income received by Industrias was interest income in the amounts of 232,500 lempiras and 350,000 lempiras, respectively (a lempira was worth $0.50 at this time). All of this interest income was paid to Industrias by United States corporations, and in each of the years 1964 and 1965, MPI paid Industrias the sum of $90,000 (180,000 lempiras) per annum as interest on the 4-percent sinking fund note held by Industrias.

The tax returns for Industrias for the years 1964 and 1965 disclose deductions for interest paid or accrued in the amounts of 225,000 lempiras and 340,000 lempiras, respectively. Industrias paid all of this interest to ECL on account of notes of Industrias then owned by ECL.

During 1964 and 1965, the assets of Industrias consisted basically of cash, interest receivable, and investments in notes, bonds, or debentures. All of these investments were in bonds, notes, or debentures of the corporations owned wholly and/or beneficially by ECL.

The liabilities of Industrias for the years 1964 and 1965 consisted for the most part of interest and notes payable to ECL. In addition, the tax returns of Industrias show Honduran tax liabilities for the years 1964 and 1965 of 187.94 and 339.29 lempiras, respectively, and small expenditures for the maintenance of a corporate office in Honduras.

During the years 1964 and 1965, there was in force a "Convention Between the United States of America and the Republic of Honduras for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income" (hereinafter referred to as the convention). Article IX of the convention provides:

Interest on bonds, securities, notes or on any other form of indebtedness from sources within one of the contracting States received by a resident, corporation or other entity of the other contracting State not having a permanent establishment within the former State at any time during the taxable year in which such interest is received, shall be exempt from tax by such former State.

Article II, the definitional article of the convention, provides in part:

(1) As used in this Convention:

\*        \*        \*        \*        \*        \*        \*

(c) The expression "permanent establishment" means a branch, office, factory, plantation, mine, railroad, warehouse and other fixed place of business, but does not include the casual or temporary use of mere storage facilities, nor does it include an agent unless the agent has and habitually exercises a general authority to negotiate and conclude contracts on behalf of the enterprise. An enterprise of one of the contracting States shall not be deemed to have a permanent establishment in the other State merely because it carries on business dealings in such other State through a *bona fide* broker, commission agent or custodian who acts as such in the ordinary course of his business. The fact that an enterprise of

one of the contracting States maintains in the other contracting State a fixed place of business exclusively for the purchase by such enterprise of goods or merchandise shall not of itself constitute such fixed place of business a permanent establishment of such enterprise. The fact that a corporation of one of the contracting States has a subsidiary corporation which is a corporation of the other contracting State or which is engaged in trade or business in the other contracting State shall not of itself constitute that subsidiary corporation a permanent establishment of its parent corporation.

(d) The expression "enterprise of one of the contracting States" means, as the case may be, "United States enterprise" or "Honduran enterprise".

(e) The term "enterprise" includes any type of enterprise whether carried on by an individual (in his individual capacity or as a member of a partnership), by corporation, or by any other entity.

(f) The term "United States enterprise" means an industrial or commercial or agricultural enterprise or undertaking carried on by a resident of the United States (including an individual in his individual capacity or as a member of a partnership) or a fiduciary of the United States or by a United States corporation or other entity; the term "United States corporation or other entity" means a corporation or other entity created or organized in the United States or under the laws of the United States or of any State or Territory of the United States.

(g) The term "Honduran enterprise" means an industrial or commercial or agricultural enterprise or undertaking carried on by a resident of Honduras (including an individual in his individual capacity or as a member of a partnership) or a fiduciary of Honduras or by a Honduran corporation or other entity; the term "Honduran corporation or other entity" means a corporation or other entity formed or organized in Honduras or under the laws of Honduras.

Section 515.3(d)(2) of the withholding regulations prescribed under the convention provided:

(2) *Interest on noncoupon bonds*—(i) *Notification by letter.* To avoid withholding of United States tax at source in the case of interest (other than coupon bond interest) to which paragraph (b) of this section applies, the nonresident alien individual who is a resident of Honduras, or the Honduran corporation or other entity, shall notify the withholding agent by letter in duplicate that the interest is exempt from United States tax under the provisions of article IX of the convention. The letter of notification shall be signed by the owner of the interest, or by his trustee or agent, and shall show the name and address of the obligor and the name and address of the owner of the interest. It shall contain a statement (*a*) that the owner is neither a citizen nor a resident of the United States but is a resident of Honduras, or, in the case of a corporation or other entity, that the owner is a Honduran corporation or other entity, and (*b*) that the owner has at no time during the current taxable year had a permanent establishment in the United States.

Section 515.3(d)(2)(iv) of these regulations further required that "Each letter of notification, or the duplicate thereof, shall be immediately forwarded by the withholding agent to the Director of International Operations, Internal Revenue Service, Washington 25, D.C."

On March 31, 1964, the secretary of Industrias wrote to MPI as follows:

Pursuant to the Tax Treaty between the United States and the Republic of Honduras, and the United States Withholding Regulations, Section 515.3(d)(2), please be informed.

1. That the undersigned corporation is the owner of the promissory note issued by you on April 1, 1963 in the principal amount of Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000.00);

2. That the interest payable thereon is exempt from United States tax under the provisions of Article IX of the income tax convention between the United States and the Republic of Honduras;

3. That the name and address of the obligor is as follows:

Mechanical Products, Inc.
1824 River Street
Jackson, Michigan, U.S.A.

4. That the name and address of the owner of the interest is as follows:

Industrias Hondurenas, S.A. de C.V.
Room 207, Banco Atlantida
Tegucigalpa, Republic of Honduras

5. That such owner is neither a citizen nor a resident of the U.S. but is a Honduran corporation;

6. That such owner has at no time during the current taxable year had a permanent establishment in the United States.

The treasurer of MPI filed a copy of the letter from Industrias with the Director of International Operations, Internal Revenue Service, Washington, D.C., as an enclosure to his letter, dated April 7, 1964, which stated:

We are pleased to enclose herewith one copy of a letter of information which was received from Industrias Hondurenas, S.A. de C.V. under date of March 31, 1964 and over the signature of Policarpo Callejas, Secretary-Treasurer.

The subject matter of the letter concerns a promissory note issued by Mechanical Products, Inc. on April 1, 1963 in the amount of $2,250,000.00, in favor of Industrias Hondurenas, S.A. de C.V.

In forwarding the notification copy to you we understand we have complied with United States Withholding Regulations Section 515.3(d)(2).

Messrs. Cummings & Lockwood, counsel to MPI, advised MPI that in accordance with article IX of the convention and section 515.3 of the withholding regulations prescribed under the convention, MPI was not required to withhold tax on the payment of interest to Industrias. No tax was withheld on the payments of interest during 1964 and 1965 to Industrias by MPI.

The convention between the United States and Honduras was terminated on December 31, 1966.

The 4-percent sinking fund promissory note issued by MPI in the amount of $2,250,000 and transferred to Industrias was repaid in full on June 14, 1967.

### OPINION

In this case, MPI, a United States corporation, was a wholly owned subsidiary of the petitioner (also a United States corporation) which in turn was a 99.997-percent subsidiary of ECL, a Bahamian corpora-

tion. ECL also owned all outstanding stock of CCN, an Ecuadorian corporation.

In April 1963, MPI borrowed $2,250,000 from ECL and issued its 4-percent sinking fund promissory note in recognition of the debt. In March 1964, Industrias was incorporated under the laws of Honduras with all of its stock being held by CCN. ECL then transferred the note of MPI to Industrias in exchange for nine of the latter's notes. Each of the nine notes was payable on demand, each note was for the same principal amount of $250,000, and each carried the same 4-percent annual interest rate.

Generally, section 1441(a) [2] requires "all persons, in whatever capacity acting," to withhold taxes on payment of any items of income specified in section 1441(b) [3] to "any nonresident alien individual" or to "any foreign partnership." Section 1441(b) designates interest as one of the items of income subject to section 1441(a). Section 1442(a) [4] requires a tax of 30 percent to be "withheld at the source in the same manner and on the same items of income" as established in section 1441 if there is a payment of any of the designated income items to a foreign corporation "subject to taxation."

Under this statutory framework, MPI ordinarily would have been required to withhold tax on the interest which is paid to Industrias. However, during 1964 and 1965, there was in force a "United States-Honduras Income Tax Convention" (the convention was terminated on December 31, 1966) to provide for "the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on incomes." Article IX of the convention provided that interest paid by a United States corporation to a Honduran corporation not having a permanent establishment in the United States was to be exempt from United States tax.

---

[2] SEC. 1441. WITHHOLDING OF TAX ON NONRESIDENT ALIENS.

(a) GENERAL RULE.—Except as otherwise provided in subsection (c), all persons, in whatever capacity acting * * * having the control, receipt, custody, disposal, or payment of any of the items of income specified in subsection (b) (to the extent that any of such items constitutes gross income from sources within the United States), of any nonresident alien individual or of any foreign partnership shall * * * deduct and withhold from such items a tax equal to 30 percent thereof, * * *

[3] SEC. 1441(b). INCOME ITEMS.—The items of income referred to in subsection (a) are interest, dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, gains described in section 402(a)(2), 403(a)(2), or 631(b) or (c), amounts subject to tax under section 871(a)(1)(C), gains subject to tax under section 871(a)(1)(D), and gains on transfers described in section 1235 made on or before October 4, 1966. * * *

[4] SEC. 1442. WITHHOLDING OF TAX ON FOREIGN CORPORATIONS.

(a) GENERAL RULE.—In the case of foreign corporations subject to taxation under this subtitle, there shall be deducted and withheld at the source in the same manner and on the same items of income as is provided in section 1441 or section 1451 a tax equal to 30 percent thereof; * * *

On the basis of the convention, MPI claimed exemption from the withholding provision applicable to United States source income paid to foreign corporations, and having ostensibly conformed to the literal requirements of the withholding regulations prescribed under the convention, MPI did not withhold tax.

The question for decision is whether the convention was applicable to the facts and circumstances of this case so as to exempt MPI from the requirements of withholding income tax on interest payments which it made to a foreign corporation, or whether petitioner, as successor by merger to MPI, is now liable for such taxes.

The respondent argues that the organization of Industrias and its existence as a corporate entity should be disregarded for tax purposes. He concludes that ECL should be deemed the true owner and recipient of the interest in question with the consequence that petitioner is now liable for the failure of MPI to withhold income tax.

Petitioner claims that an exemption from withholding flows from the exemption from taxation for interest found in article IX of the convention which provides in pertinent part:

Interest * * * from sources within one of the contracting States received by a * * * corporation or other entity of the other contracting State not having a permanent establishment within the former State * * * shall be exempt from tax by such former State.

In support of its claim for exemption from taxation under article IX, petitioner argues that Industrias conformed to the definition of a corporation established by article II, section (1) (g), in that it was "a corporation or other entity formed or organized in Honduras or under the laws of Honduras" and that it was therefore a corporation for purposes of article IX.[5] On this basis, the petitioner concludes that Industrias cannot be disregarded as a corporate entity and that the interest paid to Industrias by MPI was exempt from United States taxation under article IX thus relieving MPI of its duty to withhold income tax on such interest.

The United States Constitution provides in article VI, clause 2, that:

all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Thus, all treaties made under the authority of the United States are to be the supreme law of the land and superior to domestic tax laws. *Cook* v. *United States*, 288 U.S. 102 (1933). This concept has been

---

[5] We agree with the petitioner's view, uncontested by the respondent, that Industrias did not have a "permanent establishment" in the United States within the meaning of art. II, sec. (1) (C), and art. IX of the convention.

expressly recognized in section 894(a) which, during the years in question, provided:

SEC. 894. INCOME AFFECTED BY TREATY.

(a) INCOME EXEMPT UNDER TREATY.—Income of any kind, to the extent required by any treaty obligation of the United States, shall not be included in gross income and shall be exempt from taxation under this subtitle.

Consequently, neither the courts nor the taxing authorities may establish definitions for terms contained in a treaty contrary to those definitions expressly set forth in that treaty. Where the formal requirements of a definition established by a treaty are met, the benefits flowing from a treaty as the result of conforming to such formal definitional requirements cannot be denied by an inquiry behind those formal requirements. *Maximov* v. *United States*, 373 U.S. 49 (1963) ; *Bacardi Corp.* v. *Domenech*, 311 U.S. 150 (1940).

Article II, the definitional article of the convention, provides in section (1) (g) :

(g) The term "Honduran enterprise" means an industrial or commercial or agricultural enterprise or undertaking carried on by a resident of Honduras * * * or a fiduciary of Honduras or by a Honduran corporation or other entity; the term "Honduran corporation or other entity" means a corporation or other entity formed or organized in Honduras or under the laws of Honduras.

Article II, section (1) (f), is structured in the same manner with "United States" standing in place of "Honduras" or "Honduran" as the case may be.

The term "corporation" is nowhere defined in the convention in its own right, and in article II, sections (1) (f) and (1) (g), the definition of a corporation of a contracting State appears in the definition of an "enterprise" of such contracting State. However, in the absence of any indication to the contrary, it is clear that in defining the term "corporation" for one purpose, the contracting States intended that definition to apply in other contexts as well. Consequently, we are convinced that the term "corporation," as utilized in article IX, refers to a corporation or other entity formed or organized in one of the contracting States or under the laws of one of the contracting States.

Thus, Industrias, being a corporation organized under the laws of Honduras and conforming to the specific definition of "Honduran corporation" established by article II, section (1) (g), of the convention, was a "corporation or other entity" of one of the contracting States within the meaning of article IX. Therefore, the convention prevents us from ignoring the corporate entity as such. *Maximov* v. *United States, supra; Bacardi Corp.* v. *Domenech, supra.*

However, while we agree with the petitioner that Industrias was a "corporation" for purposes of article IX, and that it therefore cannot be disregarded, we do not agree with the petitioner's conclusion that

this factor alone was sufficient to qualify the interest in question for the exemption from taxation granted by article IX. Rather, we must determine whether the transaction in question conforms to the other requirements established by article IX.

In seeking to give substance to the terms of article IX which establish those requirements, we are free under article II, section (2),[6] of the convention, to assign to those terms "not otherwise defined" by the convention the meanings which would normally attach to such terms under our laws "unless the context otherwise requires." In so doing, we recognize that the fact that the actions taken by the parties in this case were taken to minimize their tax burden may not by itself be utilized to deny a benefit to which the parties are otherwise entitled under the convention. See *Gregory* v. *Helvering*, 293 U.S. 465, 469 (1935). And we are aware of the necessity for liberal construction in determining the applicability of the convention. *Jordan* v. *Tashiro*, 278 U.S. 123, 127 (1928).

However, "To say that we should give a broad and efficacious scope to a treaty does not mean that we must sweep within the Convention what are legally and traditionally recognized to be * * * taxpayers not clearly within its protections." *Maximov* v. *United States, supra* at 56. In deciding whether a given taxpayer in a specific instance is protected by the terms of a treaty, we must "give the specific words of a treaty a meaning consistent with the genuine shared expectations of the contracting parties," and in so doing, it is necessary to examine not only the language, but the entire context of agreement. *Maximov* v. *United States*, 299 F. 2d 565, 568 (C.A. 2, 1963), affd. 373 U.S. 49 (1963).

Applying these principles, we find that the interest payments in question were not "received by" a corporation of a contracting State (herein a Honduran corporation) within the meaning of article IX of the convention. As utilized in the context of article IX, we interpret the terms "received by" to mean interest received by a corporation of either of the contracting States as its own and not with the obligation to transmit it to another. The words "received by" refer not merely to the obtaining of physical possession on a temporary basis of funds representing interest payments from a corporation of a contracting State, but contemplate complete dominion and control over the funds.

The convention requires more than a mere exchange of paper between related corporations to come within the protection of the exemption from taxation granted by article IX of the convention, and on

---

[6] "(2) For purposes of application of the provisions of the present Convention by one of the contracting States, any term not otherwise defined shall, unless the context otherwise requires, have the meaning which such term has under the laws of such State relating to the taxes which are the subject of the present Convention."

the record as a whole, the petitioner has failed to demonstrate that a substantive indebtedness existed between a United States corporation and a Honduran corporation.

In this case, ECL transferred the $2,250,000 4-percent sinking fund promissory note of MPI to Industrias in exchange for nine notes of Industrias with each of those notes payable on demand, each with the same principal amount of $250,000, and each with the same 4-percent interest rate. In essence, Industrias acquired the $2,250,000 4-percent sinking fund promissory note of MPI by giving nine notes totaling $2,250,000 at 4-percent interest. Industrias obtained exactly what it gave up in a dollar-for-dollar exchange. Thus, it was committed to pay out exactly what it collected, and it made no profit on the acquisition of MPI's note in exchange for its own.

In these circumstances, where the transfer of MPI's note from ECL to Industrias in exchange for the notes of Industrias left Industrias with the same inflow and outflow of funds and where MPI, ECL, and Industrias were all members of the same corporate family, we cannot find that this transaction had any valid economic or business purpose. Its only purpose was to obtain the benefits of the exemption established by the treaty for interest paid by a United States corporation to a Honduran corporation. While such a tax-avoidance motive is not inherently fatal to a transaction, see *Gregory* v. *Helvering*, *supra*, such a motive standing by itself is not a business purpose which is sufficient to support a transaction for tax purposes. See *Knetsch* v. *United States*, 364 U.S. 361 (1960); *Higgins* v. *Smith*, 308 U.S. 473 (1940); *Gregory* v. *Helvering*, *supra*.

In effect, Industrias, while a valid Honduran corporation, was a collection agent with respect to the interest it received from MPI. Industrias was merely a conduit for the passage of interest payments from MPI to ECL, and it cannot be said to have received the interest as its own. Industrias had no actual beneficial interest in the interest payments it received, and in substance, MPI was paying the interest to ECL which "received" the interest within the meaning of article IX. Consequently, the interest in question must be viewed as having been "received by" an entity (ECL) which was not a "corporation or other entity" of one of the contracting States involved herein, and we therefore hold that the interest in question was not exempt from taxation by the United States under article IX of the convention.

Having determined that the interest received by Industrias from MPI was not exempt from taxation by the United States under article IX of the convention because it was not "received by" a corporation of one of the contracting States (herein a Honduran corporation) within

the meaning of that article, we must now face the question as to whether MPI (a United States corporation) was under any obligation to withhold taxes in the absence of an initial determination that the interest did not qualify for the benefits of the convention and where it had ostensibly complied with all regulations providing for its exemption from withholding on the interest payments it made to a foreign corporation.

Under normal circumstances, we would answer this question in the negative. However, in this case, the Commissioner was misled by the insufficiency of MPI's statement setting forth the facts upon which the Commissioner would ordinarily make an appropriate determination. In seeking to comply with the withholding regulations so as to obtain the protection of the convention, Industrias sent a letter to MPI notifying MPI that it (Industrias) was the owner of the April 1, 1963, promissory note, that the interest payable was exempt from United States tax under article IX of the convention, that it was not a resident or citizen of the United States, and that it did not have a permanent establishment in the United States. The letter did not specify that Industrias had acquired the note from ECL, the corporation to which the note had originally been given.

In compliance with the withholding regulations, MPI filed a copy of the letter from Industrias with the Internal Revenue Service and enclosed a letter which stated in part:

The subject matter of the letter concerns a promissory note *issued by Mechanical Products, Inc. on April 1, 1963 in the amount of $2,250,000.00, in favor of Industrias Hondurenas, S.A. de C.V.* [Emphasis supplied.]

This letter from MPI to the Internal Revenue Service did not describe or discuss the relationship of ECL to the note or the transfer of the note from ECL to Industrias.

In these circumstances, where the Commissioner was not fully apprised of all the facts and circumstances surrounding the issuance of the April 1, 1963, note and its subsequent history and where MPI, Industrias, and ECL were all related corporations, the respondent cannot be faulted for his inaction. Consequently, MPI's right to rely on the respondent's inaction as a basis for its failure to withhold cannot be sustained. Therefore, we hold that MPI and petitioner, as the successor to MPI by virtue of merger, were and are liable for the withholding taxes on the interest paid under the note issued by MPI to a foreign entity.

Notwithstanding our holding with respect to the liability of the petitioner for withholding taxes, we do not find petitioner, as successor by merger to MPI, liable for the addition to tax for failure to file a

return provided for in section 6651(a) (1).[7] The failure to file a return on the advice of counsel cannot be said to have been due to willful neglect. *Daisy M. Twinam*, 22 T.C. 83 (1954), acq. 1954-2 C.B. 6; *C. R. Lindback Foundation*, 4 T.C. 652, 667 (1945). See also *Haywood Lumber & Min. Co.* v. *Commissioner*, 178 F. 2d 769 (C.A. 2, 1950).

*Decision will be entered under Rule 50.*

---

[7] SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) ADDITION TO THE TAX.—In case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;