T.C. Memo 1999-411

UNITED STATES TAX COURT


DEL COMMERCIAL PROPERTIES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1887-98.            Filed December 20, 1999.


<u>Val J. Albright</u>, for petitioner.

<u>George E. Gasper</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  For 1990 through 1993, respondent
determined deficiencies in petitioner's Federal income taxes and
additions to tax as follows:

|        |            | Additions to Tax |            |
|--------|------------|------------------|------------|
| Year   | Deficiency | Sec. 6651(a)(1)  | Sec. 6656  |
| 1990   | $  5,823   | $  1,456         | $    582   |
| 1991   | 136,238    | 34,060           | 13,624     |
| 1992   | 479,445    | 119,861          | 47,945     |
| 1993   | 265,732    | 66,433           | 26,573     |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are whether, under sections 894, 1441, and 1442 and under a treaty between the United States and Canada, interest paid by petitioner is subject to withholding tax and whether petitioner is liable for additions to tax for failure to timely file withholding tax returns and for failure to make deposit of withholding taxes.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner's principal place of business was located in Ontario, Canada. Petitioner (Del Commercial) was incorporated in the State of Illinois. Del Commercial invested in and owned industrial real property located in the United States and leased the property to tenants.

In 1990, Del Commercial participated in a series of related and essentially simultaneous financial transactions with a number of its affiliated foreign corporations. As set forth in the

chart below, Del Commercial was a fourth-tier subsidiary of the affiliated group of corporations. For each of the affiliated corporations reflected in the chart below, we indicate the name of the corporation and in parentheses the place of incorporation. Unless qualified in the footnote to the chart, each arrow reflects 100-percent ownership and voting control of each lower level corporation.



* With regard to Delcom Properties, Inc., Rayel Construction Ltd., and Tridel Corp., the evidence suggests the possibility of some minority ownership. For 1991 and subsequent years, Rayel Construction Ltd. owned 63.5 percent of La Habra Developments Ltd., and Delcom Holdings Ltd. owned the remaining 36.5 percent.

Tridel Corp. (Tridel) provided overall management and planning for all of the affiliated corporations.

In 1990, Del Commercial needed funds to refinance and to make improvements to some of its real property located in the United States.  In order to obtain the necessary funds, officers of Tridel, acting on advice of an accounting firm, initiated and planned the following essentially simultaneous transactions.

On July 18, 1990, the Royal Bank of Canada (Royal Bank), an independent Canadian commercial bank, lent $14 million[1] to Delcom Financial Ltd. (Delcom Financial) at an interest rate based on a specified bank prime interest rate plus one-half percent per annum, payable in 20 approximately equal quarterly installments due in full on July 15, 1995 (Royal Bank loan).

On July 18, 1990, Delcom Financial purportedly made an unsecured loan to Delcom Holdings Ltd. (Delcom Holdings) in the principal amount of $14 million at the same bank prime interest rate plus five-eights percent per annum.  Delcom Holdings issued a promissory note to Delcom Financial in exchange for the purported loan.

On July 18, 1990, Delcom Holdings purportedly contributed $14 million to Delcom Cayman Ltd. (Delcom Cayman) in exchange for common shares of stock in Delcom Cayman.  Delcom Cayman then purportedly contributed $14 million to Delcom Antilles N.V.

---

[1]     All references to dollars are to U.S. dollars.

(Delcom Antilles) in exchange for common shares of stock in Delcom Antilles, and Delcom Antilles purportedly contributed $14 million to Del Investments Netherlands B.V. (Del Netherlands) in exchange for common shares of stock in Del Netherlands. Del Netherlands also executed a written guaranty that guaranteed repayment of the $14 million Royal Bank loan.

Del Netherlands maintained a small office in Barbados with one part-time officer who did not have any substantive duties or responsibilities. Other than a few purported loans to members of the affiliated group of corporations, Del Netherlands conducted minimal business activity and had negligible assets and consequently had no independent credit standing outside the affiliated group of corporations.

On July 19, 1990, as an integral part of and dependent upon the above transactions that occurred on July 18, 1990, Del Netherlands purportedly lent $14 million to Del Commercial. This purported loan was reflected by a demand promissory note of Del Commercial in favor of Del Netherlands with stated interest at a specified bank prime interest rate plus 1½ percent per annum, payable in 20 quarterly installments and due in full on July 15, 2015.[2] As part of this transaction, a security agreement and a

---

[2] Del Commercial's promissory note indicates that some interest was to be paid monthly.

general assignment of rents were entered into between Del Commercial and Del Netherlands.

Also as security for the $14 million Royal Bank loan, Del Commercial executed a document labeled "Undertaking" which reflected Del Commercial's obligation to allow Royal Bank to place a mortgage on Del Commercial's real property located in the United States, and it required Del Commercial to provide to Royal Bank annual financial statements, to insure its real property, to assign the insurance policies to Royal Bank, to defer paying dividends to shareholders, and to pay to Royal Bank on the $14 million Royal Bank loan proceeds from sale of any of Del Commercial's real property.

On January 1, 1991, Del Commercial began making payments on the $14 million loan Del Commercial purportedly had received from Del Netherlands.  In each year from 1991 to 1993, Del Commercial made the following total payments on the $14 million loan it had received:

| Year | Principal | Interest | Total Payments |
|------|-----------|----------|----------------|
| 1991 | $ 28,062 | $ 881,938 | $ 910,000 |
| 1992 | 442,329 | 3,153,283 | 3,595,612 |
| 1993 | 866,998 | 1,683,002 | 2,550,000 |

Del Commercial and Del Netherlands recorded the loan payments on their respective books and records as having been made by Del Commercial to Del Netherlands.

For 1991 through June 1992, Del Netherlands transferred the funds received from Del Commercial either to Delcom Holdings or to Delcom Financial. The funds were used to pay principal and interest owed on the $14 million Royal Bank loan.

In July of 1992, because of concern of Royal Bank over payments due on its $14 million loan, Del Commercial began to make the loan payments due on the loan it had purportedly received from Del Netherlands directly to Delcom Financial, bypassing Del Netherlands and Delcom Holdings, and Delcom Financial then forwarded funds to Royal Bank in payment on the Royal Bank loan. On Del Commercial's books and records, those loan payments were still recorded as having been made to Del Netherlands.

On December 4, 1992, Delcom Financial and Royal Bank amended the terms of the original $14 million Royal Bank loan. The amendment, among other things, increased the interest rate charged on the loan by 1 percent. Also, under the amended loan agreement, Tridel added its guaranty on the Royal Bank loan.

For 1990 through 1993, Del Commercial did not file U.S. Federal withholding tax returns with respect to the interest payments in issue.

On audit, respondent determined that the substance of the $14 million loan to Del Commercial reflected a loan not from Del Netherlands, but from Delcom Financial, and therefore that the

interest payments Del Commercial made on the loan should be treated as having been made by Del Commercial to Delcom Financial and as subject to withholding tax.

OPINION

Under section 881(a), foreign corporations which receive interest income from U.S. payors (that is not effectively connected with conduct of a trade or business within the United States) are liable for a tax of 30 percent of the interest received. U.S. taxpayers who pay the interest to the foreign corporations generally are required to withhold the 30-percent tax from interest payments made to the foreign corporations. See secs. 1441 and 1442. U.S. taxpayers who are required to withhold the 30-percent tax and who fail to do so become personally liable for the withholding tax. See sec. 1461.

Under section 894, U.S. treaty provisions may modify the Internal Revenue Code, including the withholding tax provisions. For the years at issue, under a treaty between the United States and Canada (U.S.-Canada Treaty), interest payments made by U.S. taxpayers to Canadian corporations are subject to tax at a rate not exceeding 15 percent if the Canadian corporations are the beneficial recipients and owners of the interest income. See Convention on Taxes on Income and Capital, Sept. 26, 1980, U.S.-Can., art. XI, T.I.A.S. No. 11087.

Also, under a treaty between the United States and the Netherlands (U.S.-Netherlands Treaty), interest payments made by U.S. taxpayers to Netherlands corporations are exempt from tax by the United States. See Supplementary Convention on Taxes on Income and Other Taxes, Dec. 30, 1965, U.S.-Neth., art. VI, 17 U.S.T. 896, 901.

U.S. tax laws and treaties, however, do not recognize as valid for tax purposes sham transactions or transactions that have no economic substance. See Gregory v. Helvering, 293 U.S. 465, 470 (1935); Johansson v. United States, 336 F.2d 809, 813 (5th Cir. 1964). Even legitimate corporations may engage in sham transactions. See Knetsch v. United States, 364 U.S. 361, 366 (1960).

Also, under various applications of the step-transaction doctrine, a series of formally separate steps may be collapsed and treated as a single transaction. See Penrod v. Commissioner, 88 T.C. 1415, 1428 (1987). A series of steps may be collapsed and treated as one if at the time the first step was entered into there was a binding commitment to undertake the later step (binding-commitment test), if separate steps constitute prearranged parts of a single transaction intended to reach an end result (end-result test), or if separate steps are so interdependent that the legal relations created by one step would

have been fruitless without a completion of the series of steps
(mutual-interdependence test).  See id. at 1429-1430; Custom
Chrome, Inc. v. Commissioner, T.C. Memo. 1998-317, on appeal
(9th Cir., Nov. 9, 1998).

We have applied the step-transaction doctrine to disregard
the use of intermediaries and conduits for Federal tax purposes.
See Packard v. Commissioner, 85 T.C. 397, 420 (1985); D'Angelo
Associates, Inc. v. Commissioner, 70 T.C. 121, 129 (1978); Gaw v.
Commissioner, T.C. Memo. 1995-531, affd. without published
opinion 111 F.3d 962 (D.C. Cir. 1997).

Back-to-back loans similar to those involved herein between
U.S. corporations and related foreign corporations and between
the foreign corporations and their indirect foreign parent
corporations have been held to represent mere conduits for the
passage of interest payments, and in such situations we have
imposed withholding tax liability on the U.S. corporate payors.
See Aiken Indus., Inc. v. Commissioner, 56 T.C. 925, 934 (1971).

Respondent argues that in substance the interest payments in
issue made by Del Commercial were paid to Delcom Financial, a
Canadian taxpayer, with regard to the $14 million Royal Bank loan
and therefore that Del Commercial, under the U.S.-Canada Treaty,
is liable for a 15-percent withholding tax on the interest
payments.

Del Commercial argues that the interest payments were made to Del Netherlands, a Netherlands corporation, and therefore that under the U.S.-Netherlands Treaty the interest payments are exempt from U.S. withholding tax.

Regardless of which theory is used under the step-transaction doctrine, the facts in this case result in the same conclusion. The facts reflect a step transaction created simply to bypass U.S. withholding tax. Del Netherlands had minimal assets, and Del Netherlands had only transitory possession of and no control over the $14 million loan proceeds as the proceeds were passed from Delcom Financial to Del Commercial. Apart from the purported $14 million loan to Del Commercial, Del Netherlands engaged in minimal business activity, and the Barbados branch of Del Netherlands had no officer with any substantive duties or responsibilities.

Royal Bank, the independent third-party lender which ultimately provided the $14 million, exacted guaranties from Del Commercial and mortgages or deeds of trust on Del Commercial's U.S. real property, establishing the link between the loan payments Del Commercial made and the Royal Bank loan. Del Netherlands passed on the loan payments received from Del Commercial to its affiliated Canadian corporations in order to service the $14 million Royal Bank loan. After July of 1992, Del Commercial bypassed Del Netherlands completely and made the loan

payments directly to Delcom Financial. Del Netherlands acted as a mere shell or conduit with respect to the interest payments Del Commercial made. In substance, Del Commercial received the $14 million loan from Delcom Financial and made the loan payments to Delcom Financial, a Canadian corporation. Del Commercial therefore is liable for the withholding taxes determined by respondent.

Northern Ind. Pub. Serv. Co. v. Commissioner, 105 T.C. 341 (1995), affd. 115 F.3d 506 (7th Cir. 1997), on which Del Commercial relies, is distinguishable. That case involved a loan to a U.S. corporation from a foreign subsidiary corporation using funds obtained from unrelated parties on the Eurobond market. In the transaction at issue in the instant case, the participation of Del Netherlands had no purpose other than avoidance of withholding tax. Even the interest-rate spread that Del Netherlands was to earn was eliminated in 1992 when the interest rate of the Royal Bank loan was increased to 1½ percent. Northern Ind. Pub. Serv. Co. provides no support for Del Commercial.

Under section 6651(a)(1), an addition to tax is imposed for failure to file a tax return, and under section 6656, an addition to tax is imposed for failure to timely deposit a tax due in a Government depository, unless it is shown that such failures were attributable to reasonable cause and not to willful neglect. Del

Commercial has not presented any credible argument that the failure to file and the failure to timely deposit withholding taxes due on interest paid on the $14 million loan were attributable to reasonable cause.  Respondent's determinations of the additions to tax are sustained.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.