T.C. Memo. 2010-224

UNITED STATES TAX COURT

YURY LILIANA TRIBIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3714-09.                    Filed October 14, 2010.

Using the bank deposits method, R determined
deficiencies in Federal income tax for P's 2002, 2003
and 2004 tax years.

<u>Held</u>:  Bank deposits representing cash receipts from
P's sister that P used to make payments on a car loan on her
sister's behalf are not includable in P's income.  The
remaining unexplained bank deposits are includable in P's
taxable income.

Yury Liliana Tribin, pro se.

<u>Timothy L. Smith</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of alleged deficiencies in petitioner's income tax for 2002, 2003 and 2004 tax years.  Respondent determined that petitioner is liable for Federal income tax deficiencies of $2,146, $8,301, and $8,096 for her 2002, 2003, and 2004 tax years, respectively.[1]  After concessions by both respondent and petitioner,[2] the only issue remaining for decision is whether various unidentified cash deposits are includable in petitioner's income for her 2002, 2003, and 2004 tax years.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of settled issues, the stipulated facts, and the accompanying exhibits are hereby incorporated by this reference.  At the time she filed her petition, petitioner resided in Florida.

Petitioner was an independent contractor of Closets and Closets, Inc., during the 2002, 2003, and 2004 tax years.

---

[1]Unless otherwise noted, all values have been rounded to the nearest whole dollar amount.

[2]For the tax years 2002, 2003, and 2004 petitioner has conceded depreciation and sec. 179, I.R.C., expense adjustments of negative $1,800, $14,400, and $17,400, respectively, claimed on Schedules C, Profit or Loss From Business, of her Forms 1040, U.S. Individual Income Tax Return.  Respondent has conceded that the unexplained bank deposits for May 6, 2003, of $1,444, May 23, 2003, of $2,085, July 6, 2004, of $2,280, July 19, 2004, of $1,039, and December 14, 2004, of $613 should not be included in income.

Closets and Closets, Inc., specialized in the redesigning of closets and paid petitioner commissions on sales of closet designs. Petitioner reported income on Forms 1040, U.S. Individual Income Tax Return, for the 2002, 2003 and 2004 tax years.

Petitioner moved to the United States only 2 years before the tax years at issue and was raising three children on her own. During the tax years at issue petitioner opened her home to a number of her relatives who periodically stayed with her. For example, petitioner's ex-husband's sister-in-law, Beatriz Agudelo (Ms. Agudelo), lived in petitioner's home while she was pregnant because she wanted to give birth in the United States.

Twice during 2002 petitioner's sister from Colombia, Claudia Tribin-Mora (Ms. Tribin-Mora), stayed with petitioner. On her second visit in November of 2002 Ms. Tribin-Mora advanced $5,000 to petitioner. Sometime during February or March of 2003 Ms. Tribin-Mora decided to purchase a car. Since Ms. Tribin-Mora lacked a valid U.S. Social Security number, petitioner purchased the car and obtained the loan in her own name on Ms. Tribin-Mora's behalf. As repayment of the $5,000 advance received from Ms. Tribin-Mora, petitioner made payments on the car loan until Ms. Tribin-Mora secured a job. Once Ms. Tribin-Mora secured employment, she gave petitioner cash each month to make that

month's car loan payment and petitioner transferred the money to the automobile finance company by writing a check.

During the 2002, 2003, and 2004 tax years petitioner maintained two checking accounts at Washington Mutual Bank. She also maintained a checking account at Dade County Federal Credit Union during the last part of 2002 and 2003.

Respondent determined that petitioner failed to maintain or submit for examination complete and adequate books and accounts of her income-producing activities for 2002, 2003, and 2004. Respondent reconstructed petitioner's income by analyzing petitioner's bank deposits in her three checking accounts. Respondent determined that petitioner had total bank deposits of $61,196, $111,043, and $65,564 for 2002, 2003, and 2004, respectively. Respondent then reduced those amounts by the identifiable deposits reported in income, nontaxable deposits, and transfers for each of 2002, 2003, and 2004. After concessions, unidentified taxable deposits of $11,656, $15,619, and $16,087 for the 2002, 2003, and 2004 tax years, respectively, remain at issue.

Respondent issued a notice of deficiency on November 14, 2008, determining alleged income tax deficiencies of $2,146, $8,301, and $8,096 for the 2002, 2003, and 2004 tax years. Petitioner filed a timely petition with this Court on February

18, 2009, denying that she owes the deficiencies.  A trial was held on January 12, 2010, in Miami, Florida.

OPINION

I.  Burden of Proof

Section 61(a) specifies that "Except as otherwise provided", gross income includes "all income from whatever source derived".[3]  The Commissioner's determination of a taxpayer's liability for an income tax deficiency is generally presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Where unreported income is involved, the presumption of correctness applies once the Commissioner introduces some substantive evidence reflecting that the taxpayer received unreported income.  Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97; Dodge v. Commissioner, 981 F.2d 350, 354 (8th Cir. 1992), affg. in part and revg. in part 96 T.C. 172 (1991).  If the Commissioner introduces such evidence, the burden shifts to the taxpayer to show by a preponderance of the evidence that the deficiency was arbitrary

_____

[3]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended and in effect for the tax years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

or erroneous.[4]  <u>Hardy v. Commissioner</u>, <u>supra</u>.  As explained below, respondent has introduced sufficient evidence connecting petitioner with the unreported income.  Consequently, respondent's determination is entitled to the presumption of correctness.

## II.  <u>Recordkeeping Requirements</u>

The taxpayer must maintain adequate records to substantiate her income and deductions.  Sec. 6001 (the taxpayer "shall keep such records"); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).  As in this case, when the taxpayer fails to maintain adequate books and records, the Commissioner is authorized to use whatever method he deems appropriate to determine the existence and amount of taxpayer's income so long as it clearly reflects income.  Sec. 446(b); <u>Mallette Bros. Constr. Co., Inc. v. United States</u>, 695 F.2d 145, 148 (5th Cir. 1983); <u>Gowni v. Commissioner</u>, T.C. Memo. 2004-154.  The Commissioner has wide discretion in determining which method to apply, and reconstruction of the taxpayer's income "need only be reasonable in light of all surrounding facts and circumstances."  <u>Gowni v. Commissioner</u>, <u>supra</u>.  Petitioner did not comply with the requirements of

---

[4]Although sec. 7491(a) may shift the burden of proof to the Commissioner in specified circumstances, as we explain below, petitioner has fallen far short of satisfying the prerequisites under sec. 7491(a)(1) and (2) for such a shift.

section 6001 and section 1.6001-1, Income Tax Regs., in that she failed to maintain adequate books and records.

III. Bank Deposits Method of Proof

Respondent used the bank deposits method of proof to reconstruct petitioner's income for 2002, 2003 and 2004. "Deposits in a taxpayer's bank account are prima facie evidence of income, and the taxpayer bears the burden of showing that the deposits were not taxable income but were derived from a nontaxable source." Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), affg. T.C. Memo. 1998-121. "The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which it has knowledge." Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994) (citing DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992)). After the deposits have been shown to be "in the nature of income and to exceed what the taxpayer had reported as income," it becomes the taxpayer's responsibility to show that the deposits were nontaxable. Dodge v. Commissioner, supra at 354.

Most of petitioner's unexplained deposits were small cash deposits, and she provided little or no corroborating evidence that those deposits were not taxable. However, with respect to a

series of transactions between petitioner and her sister, Ms. Tribin-Mora, we find that petitioner did present sufficient evidence as to the source of the deposits and that they should not be included in income.

At trial, petitioner testified credibly that in November 2002 Ms. Tribin-Mora lent her $5,000 with the expectation that petitioner would repay it. Petitioner did not introduce any documents relating to this loan or otherwise specify its terms. However, the date on Ms. Tribin-Mora's visa corroborates petitioner's testimony that Ms. Tribin-Mora entered the United States in November of 2002.

Further evidence of this loan is the automobile transaction petitioner entered into on behalf of her sister in 2003. Generally, a taxpayer may conduct his business in whatever form he chooses and "must accept the [resulting] tax disadvantages." Higgins v. Smith, 308 U.S. 473, 477 (1940); see also Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 152 (1974). However, the Commissioner may look beyond the mere form of the transaction to determine its true substance. See Gregory v. Helvering, 293 U.S. 465, 469-470 (1935). Respondent has "determined that * * * [petitioner] purchased the vehicle for * * * [her] sister in the tax year 2003" as stated in the notice of deficiency. Petitioner then began repaying the initial $5,000 loan "little by little" by making payments on Ms. Tribin-Mora's

car.  When Ms. Tribin-Mora secured employment, she began giving
petitioner cash for the car payments.  The following table
summarizes the loan payments petitioner made and demonstrates
that certain unexplained bank deposits closely track the checks
written to the automobile finance company.  It shows each check
date, the check number, the amount of the check, the date of the
alleged corresponding cash deposit, and its amount.

| Check Date | Check No. | Amount | Cash Deposit Date | Amount |
|---|---|---|---|---|
| 4/21/03 | 324 | $400.25 | 4/17/03 | $400 |
| 5/18/03 | 338 | 400.25 | 5/13/03 | 400 |
| 6/19/03 | 349 | 400.25 | 6/24/03 | 620 |
| 7/15/03 | 365 | 400.25 | ([1]) | |
| 8/18/03 | 387 | 400.25 | | |
| 9/19/03 | 410 | 400.25 | 9/22/03 | 400 |
| 10/18/03 | 429 | 400.25 | 10/29/03 | 450 |
| 11/20/03 | 441 | 400.25 | 11/25/03 | 205 |
| 12/12/03 | 452 | 400.25 | | |

[1]No deposits of this size were questioned by respondent in
July, August, or December of 2003; therefore, petitioner did not
provide any explanation for the payments for those months.

    Ignoring the form of this transaction and focusing on the
substance, we find that by incurring indebtedness to acquire a
car for her sister's benefit, petitioner was in essence lending
the amount of the debt proceeds to her sister, Ms. Tribin-Mora.
Ms. Tribin-Mora then made payments against the car loan by
initial use of a portion of the $5,000 loan she had made to

petitioner in November of 2002 and later through petitioner who, in turn, repaid the money to the automobile finance company. Because petitioner was merely a conduit for the car loan and the cash payments, the deposits to her account made with her sister's funds do not constitute taxable income to petitioner. See Aiken Indus., Inc. v. Commissioner, 56 T.C. 925, 934 (1971) (disregarding the conduit in a two-tier loan arrangement involving a nominal borrower interposed between the lender and the entity actually using the loan proceeds).

We find that there is sufficient creditable evidence corroborating petitioner's testimony that the $5,000 deposit in 2002 was a loan from her sister and, therefore, not includable in petitioner's income. See United States v. Rochelle, 384 F.2d 748, 751 (5th Cir. 1967) (citing James v. United States, 366 U.S. 213, 219 (1961)). We also find that the deposits during 2003 that correspond to the automobile finance payments were merely paid through petitioner as a conduit and do not constitute income.[5] Therefore the $11,656 of identified but still disputed taxable deposits for 2002 will be reduced by the $5,000 loan, and the $15,619 of the remaining identified but still disputed

_____

[5]In 2004, petitioner purchased another car and there is no evidence that petitioner continued to make payments for her sister on the 2003 automobile loan. Petitioner has not claimed that any of the unidentified deposits in 2004 was for a car loan payment.

taxable deposits, after concessions, for 2003 will be reduced by the cash deposits identified as car payments totaling $2,475.

At trial, petitioner presented no evidence corroborating her minimal self-serving statements concerning the remaining unidentified deposits. Because she failed to keep adequate records, petitioner was forced to rely on her admittedly faulty memory to explain the multiple small cash deposits. Petitioner explained that she "tried to remember all these, but it's impossible for me * * * to think about where the money comes from and this comes from and try to find out."

Although petitioner had a difficult time remembering the sources of the cash deposits, she stated that it "wasn't income because this money coming from my country, from my family" and that "Some of the deposits were gifts. Not all. Some of the deposits were loans." Petitioner presented no documentary evidence of the claimed additional gifts or the loans, nor any circumstantial evidence similar to that concerning the $5,000 loan and car transaction.[6] We are unpersuaded by petitioner's vague self-serving testimony that the deposits were loans or gifts. See Page v. Commissioner, 58 F.3d 1342, 1346 (8th Cir.

---

[6]We note that had petitioner substantiated the unidentified deposits as loans or gifts they would not be included in her taxable income. See sec. 102(a); United States v. Rochelle, 384 F.2d 748, 751 (5th Cir. 1967).

1995), affg. T.C. Memo. 1993-398; <u>Schneebalg v. Commissioner</u>, T.C. Memo. 1988-563.[7]

Petitioner also claimed that while her ex-husband's sister-in-law, Ms. Agudelo, lived in her home, she gave petitioner cash. However, petitioner presented no evidence corroborating the source of those deposits, and Ms. Agudelo did not testify. Even if petitioner's claims are true, the payments may have been for rent or rent and board, and, if so, may still be includable in income. Sec. 61(a)(2), (5).

IV. <u>Conclusion</u>

We find that the $5,000 loan to petitioner from Ms. Tribin-Mora made in 2002 and the cash deposits totaling $2,475 in 2003 corresponding to the payments made by petitioner on behalf of Ms. Tribin-Mora are not includable in petitioner's income. The remaining still-disputed and unexplained bank deposits identified by respondent are includable in petitioner's taxable income.

---

[7]We note that "'Arithmetic precision was originally and exclusively in * * * [petitioner's] hands, and [she] had a statutory duty to provide it...[H]aving defaulted in [her] duty, [she] cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should [she] be overly chagrined at the Tax Court's reluctance to credit every word of [her] negative wails.'" <u>Page v. Commissioner</u>, 58 F.3d 1342, 1348 n.6 (8th Cir. 1995) (quoting <u>Rowell v. Commissioner</u>, 884 F.2d 1085, 1088 (8th Cir. 1989), affg. T.C. Memo. 1988-410), affg. T.C. Memo. 1993-398.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.